Corning and Winslow agt. The Troy Iron and Nail Factory and Burden.

## SUPREME COURT.

### CORNING & WINSLOW agt. THE TROY IRON AND NAIL FACTORY AND H. BURDEN.

Where the plaintiff appears to be entitled to a decree for a perpetual injunction, he may have a temporary injunction also, *pendente lite*, provided it is necessary to protect him from injury. The law in regard to injunctions has not been materially changed. (*The case of Cure agt. Crawford*, 5 *How.* 293, *not concurred in*).

It is not enough for a plaintiff, to entitle him to a temporary injunction, to show that the continuance of the acts complained of will do him an injury; he must also show that it is a case in which he will be entitled to final relief by injunction.

The obstruction of water courses are such grievances as call for the equitable remedy by injunction (*Story's Eq. Juris.* § 927; *Eden on Injunctions*, 108; *Angell on Water Courses*, § 444, &c.)

Where the defendants constructed a large reservoir above their mills, by damming the stream and erecting a dyke for the purpose of securing a more equable and continuous flow of the water; which gave to them a control over the water; and which plaintiffs claimed, were exerted by the defendants to the great damage and injury of the plaintiffs in the use of their mills and machinery below, on the same stream (notwithstanding it appeared that said reservoir might, with proper management, have been beneficial to plaintiffs); and it appearing that both parties were equally entitled, as riparian proprietors, to the use of the stream, *held*, that the plaintiffs were entitled to an injunction, *pendente lite*, of an action for damages for such injuries, and to secure protection against future injuries of like character.

*Albany Special Term, May* 1851.    This was an application for an injunction to restrain the defendants from closing the waste gate of their dam or reservoir.   An injunction had been allowed by a justice of this court at chambers, which was subsequently modified on application of the defendants, and an order made to show cause at special term why an injunction order should not be made according to the prayer of the complaint.   The application was made on the complaint and affidavits, and was also resisted on affidavits.   Many affidavits were read on both sides. The facts are sufficiently stated in the opinion of the court to show what questions of law were decided.

HILL & PORTER, *for Plaintiffs.*

SAMUEL STEVENS, *for Defendants.*

8

PARKER, Justice.—The mills of the defendants are situated on the Wynant's Kill, above, and eastwardly of the mills and machinery of the plaintiffs. Both parties claim the right to use the water as riparian proprietors of the land over which the stream passes. The land of the plaintiffs has been owned and occupied and the water of the stream used for hydraulic purposes, by them and the persons under whom they claim, for over sixty years. The defendants derive their title to the land above, on the same stream, from the same common source; though it has been held and enjoyed by them for a term of time much shorter than that of the plaintiffs.

In 1846, the defendants constructed a large reservoir, above their mills, by damming the stream and erecting a dyke on the north side, for the purpose of securing a more equable and continuous flow of the water, which was liable to be interrupted by mills still further up on the same stream. That dam, being carried away by a freshet in the autumn of 1850, was rebuilt by the defendants. The reservoir was large in proportion to the size of the stream, and gave to the defendants a control over the water that might be exerted to the great detriment of the plaintiffs. The plaintiffs claim that it has been so exerted. That at times they have been for a long time, deprived entirely of the natural flow of the water, and at other times the water has been discharged upon them in torrents, to their very great injury. The plaintiffs allege that this has been done frequently, unnecessarily and at unseasonable hours, and with a view to their injury; and that in consequence thereof the plaintiffs' several mills dependent upon the stream for water power, and for water for generating steam, have been rendered at times useless. That great numbers of their workmen have been interrupted in their labor, and that the plaintiffs have been delayed and prevented from complying with their business engagements. It appears that the amount invested in the plaintiffs' mills and machinery is not less than $250,000, and that such property would not be worth more than one-eighth of such valuation for manufacturing purposes, if deprived of the uniform use of the stream of water in question.

Corning and Winslow agt. Troy Iron and Nail Factory and Burden.

The evidence before me is certainly very conflicting upon many of the matters in controversy—and upon most of them, it is not necessary at this stage of the action to express any opinion. It can not be doubted, however, but the plaintiffs have sustained great injury from the irregular supply of the water, and that such irregularity is principally chargeable to the defendants' reservoir, and to the manner of its use. This action is brought to recover compensation for such injury, and to secure protection against future injuries of a like character.

I do not see that either party has gained or lost any legal rights to the use of the water by prescription. Both parties have a right to the use of the stream, according to its natural and accustomed current, unless there has been a diversion, or a use of the water in a manner inconsistent with its full enjoyment, for a time sufficiently long to ripen into a legal right (Merritt vs. Brinckerhoff, 17 *John. R.* 306; *Angell on Water Courses 4th ed.* § 115 to 119, and cases there cited). I think this case governed by the well settled principle, that every riparian proprietor has a right to a reasonable use of the water, as it passes over his land; and for that purpose, he may erect a dam and machinery, subject however to the limitation, that the water must be so used as to protect the owner of similar property below, against serious damage. Both parties are allowed to participate in the benefits of the stream to a reasonable extent.

It is certainly no answer to this application or to this action, to say that the plaintiffs have been benefited by the construction of the reservoir. The reservoir, properly managed, may be beneficial to the plaintiffs, by equalizing the flow of the water; but improperly managed, it might greatly increase the irregularity of the supply. In no case can a defendant escape liability for doing an injury by setting up an independent benefit conferred on the plaintiff.

It is objected that this is not a proper case for relief by injunction. To entitle the plaintiffs to such a remedy, their legal rights should, in the first place, be clearly established. They are so, I think, in this case. The right of the plaintiffs to the use of the

92          NEW-YORK PRACTICE REPORTS.

Corning and Winslow agt. Troy Iron and Nail Factory agt. Burden.

water is not controverted.    The fact that such right has been invaded is also shown by the proofs before me.

Is the injury of such a character as to warrant an interference by injunction?    I can not concur in the conclusion of the learned justice, who delivered the opinion in Cure vs. Crawford (5 *How. Pr. R.* 293), that, under the Code, an injunction may be granted in every case where the act sought to be restrained would " produce injury to the plaintiff."    The 219th section of the Code of 1849, under which, it is supposed, such provision is made, reads as follows: " Where it shall appear by the complaint, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, *would produce injury to the plaintiff*, &c., a temporary injunction may be granted to restrain such act."    This is only saying that where the plaintiff appears to be entitled to a decree for a perpetual injunction, he may have a temporary injunction also, *pendente lite*, provided it is necessary to protect the plaintiff from injury.    That is to say, that the act may be restrained by temporary injunction, if the commission of it would produce injury to the plaintiff; and if, also, the nature and extent of the injury be such as to entitle the plaintiff to a final perpetual injunction.    Both these grounds must be shown to exist before a temporary injunction can be allowed.    If this is the right construction of the section, the law in regard to injunctions has not been materially changed.    There was certainly no reason for changing it, and I can not think it was intended to do more than to regulate the practice and render it uniform.

The construction given in Cure agt. Crawford has been sought to be upheld, because in the Code of 1848, § 193, the words " great or irreparable" were inserted before " injury," which words have been omitted in the Code of 1849, in the section above quoted.    The effect of these words in the Code of 1848, was to restrict the issuing of temporary injunctions to very narrow limits.    Under that section the plaintiff, to obtain such injunction, was required to show not only that he would be entitled

to a final perpetual injunction, but also that the injury, *pendente lite,* would be " great or irreparable." There were many cases in which a final injunction might be decreed, where the injury, if committed, would have been less serious; but in no case under the Code of 1848, could a temporary injunction issue, unless the act restrained would, if committed, produce an injury, " great or irreparable." This was a new restriction upon equitable remedies that could not have been deemed necessary, and therefore the section was amended in 1849.

If the true construction of the 219th section of the Code of 1849 is, that an injunction may be issued in every case of injury or threatened injury, then the plaintiff is entitled to it whenever a trespass has been committed upon his property, and even when injury is threatened to his person. Injuries of every description and of the most trifling character would entitle a plaintiff to an injunction. But if, in addition, the plaintiff, to entitle him to such temporary injunction, must show that it is a case in which, by law, he will be entitled to a final perpetual injunction, then there is no reason to complain of the section in question.

It is not enough, therefore, for the plaintiffs, to entitle them to a temporary injunction, to show that the continuance of the acts complained of will do them an injury. They must also show that it is a case in which they will be entitled to final relief by injunction.

In regard to private nuisances, the interference of courts by way of injunction, is undoubtedly founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits ( *Story's Eq. Juris.* § 925, and cases there cited); and Story says " there must be such an injury as from its continuance or permanent mischief, must occasision a constantly recurring grievance, which can not be otherwise prevented but by injunction;" and (§ 927) he enumerates the destruction of water courses as being of that description. It is well settled that the equitable remedy by injunction is applicable to such a case ( *Eden on Injunctions,* 168; *Angell on Water Courses,* §§ 444, 445, 446; Finch vs. Res-

bridger, 2 *Vern. R.* 390; Society, &c. vs. Morris Canal Co., 1
*Saxton Ch. R.* 157; Smith vs. Adams, 6 *Paige R.* 435). In
Robinson vs. Lord Byron (1 *Bro. C. C.* 588), where an injunc-
tion was prayed for against using the water of a stream in any
other manner than it had been used before; and it appeared that
the defendant sometimes withheld the water, and at other times
discharged it, in such quantities as to create a danger of sweep-
ing away the plaintiff's mills, the injunction was granted as
prayed, until an action then pending for the injury complained
of was decided; and the right being found for the plaintiff, the
injunction was made perpetual.    It has been frequently de-
cided that courts of equity have concurrent jurisdiction with
courts of law, in a case of private nuisance for diverting or ob-
structing an ancient water course, and may issue an injunction to
prevent the interruption (*Eden on Inj.* 164, rule 7; Gardner vs.
Newburgh, 2 *John. Ch. R.* 162; Van Bergen vs. Van Bergen, *id.*
272; Belknap vs. Belknap, *id.* 463; 3 *John. Ch. R.* 282; 5 *id.*
101; 6 *id.* 439; Case vs. Haight, 3 *Wend. R.* 632; *Angell on
Water Courses* § 450; Arthur vs. Case, 1 *Paige, R.* 447). In
addition to the consideration that injuries of this nature are
generally irreparable, and such is, I think, clearly shown to be
the case in this instance; the continuance of the injury would in
time ripen into an adverse prescriptive right, in violation of the
legal rights of the plaintiffs.    This is also assigned as a reason
why the injured party in such case should have the protection
of a preliminary injunction (*Angell on Water Courses*, § 449,
and cases there cited).    The plaintiffs are therefore entitled to
the protection of an injunction, pending the litigation.

It is next objected that if the plaintiffs are entitled to a pre-
liminary injunction, it can not be granted in the form specifically
asked for in the complaint; and therefore that the application
should be denied.    This is an application to grant, not to dissolve
an injunction.    The complainants pray specifically in their com-
plaint for an injunction restraining the defendants from closing
the gate of their dam.    Such an order would relieve the plaintiffs,
because it would give them the natural flow of the stream; but it

Corning and Winslow agt. Troy Iron and Nail Factory and Burden.

might inflict a great and unnecessary injury on the defendants, by depriving them entirely of the use of the water of the stream; because it appears that the defendants' machinery is propelled by water conducted to their water-wheel by an aqueduct leading from the defendants' reservoir. Such an order would be clearly inequitable. Both parties are entitled to the use of the stream; and no order must be made for the protection of the plaintiffs, which will infringe upon the legal rights of.the defendants.

An injunction order can be made, however, which will protect the plaintiffs and will not interfere at all with the defendants' enjoyment of the water; viz., an order restraining the defendants from raising the waste gate of the dam. Such relief is entirely consistent with the facts alleged in the complaint and may be granted under the general prayer for relief (1 *Barb. Ch. Pr.* 37, Colton vs. Ross; 2 *Paige,* 396, and cases there cited). By keeping the gate closed, the plaintiffs will get all the surplus water. after the filling of the defendants' reservoir, either from the overflowing of the dam, or through the defendants' aqueduct; and will be saved the annoyance of a deprivation of water and the injury resulting from the water being poured down suddenly upon them.

The injunction order must therefore be so modified as to require the defendants, and each of them, to refrain and desist from opening or permitting to be opened the waste gate of the defendants' dam, except on a sudden immmergency it shall become absolutely necessary to do so in order to repair their said dam or machinery; and then only on due notice to the plaintiffs, and at an hour least likely to conflict with their interests: and that the defendants do also refrain and desist from opening or using the gate of the aqueduct, leading from the defendants' reservoir to their machinery, except when the defendants are using the water to propel their machinery, and they must be enjoined generally against impeding the uniform and continuous flow of the water from the pond above said dam.